[658 NE2d 1042, 635 NYS2d 169]

In the Matter of JACLYN P. and Another. NASSAU COUNTY

DEPARTMENT OF SOCIAL SERVICES, Respondent; ROBERT P., Appellant.

Argued September 14, 1995; decided November 1, 1995

### APPEARANCES OF COUNSEL

*Schapiro & Reich,* Lindenhurst *(Perry S. Reich* and *Steven M. Schapiro* of counsel), for appellant.

*Owen B. Walsh, County Attorney* of Nassau County, Mineola

*(Bernadine M. Koch* and *Marilyn L. Olshansky* of counsel), for respondent.

*Kenneth J. Munnelly,* Delmar, *Law Guardian.*

*Barbara H. Dildine,* New York City, and *Jane M. Spinak* for Legal Aid Society, Juvenile Rights Division, *amicus curiae.*

### OPINION OF THE COURT

MEMORANDUM.

The judgment appealed from and the order of the Appellate Division brought up for review should be affirmed, with costs.

In this child protective proceeding, petitioner Department of Social Services commenced proceedings against respondent father alleging that he had sexually abused and neglected his two young daughters, Melissa and Jaclyn. At a hearing before Family Court, the children's mother testified that her daughter Melissa had described repeated incidents of respondent's abuse of both children. Several medical doctors and mental health professionals who had examined one or more of the family members testified that there were no physical signs of abuse and that they were unable to confirm or refute the allegation that Melissa had been abused by her father.

The "validation" testimony *(see, Matter of Nicole V.,* 71 NY2d 112) was provided by Yael Layish, a certified social worker who had interviewed Melissa extensively, using anatomically correct dolls and a technique called the "Sue White protocol." Layish ultimately obtained detailed descriptions from Melissa of incidents of abuse that had been directed against her and her sister. Based on her professional judgment, Layish concluded that these descriptions were accurate and reliable.

Respondent testified on his own behalf and denied sexually abusing his daughters. His mother, who had supervised the children's visits with their father, testified that Melissa never complained to her of any problems with respondent. A psychologist and family therapist hired by respondent testified, from two observations of the children and their father, that the allegations of abuse were unfounded.

Family Court dismissed the abuse and neglect petition, declaring simply that "the evidence was absolutely even." On appeal, however, Family Court's order was reversed by the Appellate Division which, after evaluating the testimony of each witness (179 AD2d 646), concluded that Layish's testi-

mony, along with the other evidence, provided a sufficient ground for a finding of abuse. The court found Layish's testimony "highly reliable" and respondent's evidence "unpersuasive" (179 AD2d, at 651, 652), and determined that the evidence preponderated in favor of the presentment agency (see, Family Ct Act § 1046; Matter of Tammie Z., 66 NY2d 1, 3). After a dispositional hearing, respondent took the present appeal by permission of this Court.

On the central legal question presented by this appeal, we conclude that the weight of the evidence more closely comports with the Appellate Division's determination (see, CPLR 5501 [b]; see also, Matter of Shelia G., 61 NY2d 368, 386; Matter of Hime Y., 54 NY2d 282, 286). Layish's testimony corroborated the child's out-of-court statements of abuse and, along with the other evidence presented, provided sufficient support for a finding of abuse against respondent, even though the acts charged by their nature did not result in physical injury such as that found in Nicole V. Respondent's remaining contentions are either without merit or unpreserved.*

SMITH, J. (dissenting). Because I believe the majority has not adequately addressed the issues raised in this proceeding, I dissent.

The Nassau County Department of Social Services commenced this child protective proceeding alleging that appellant, Robert P., sexually abused and neglected his two daughters, Jaclyn P. (age 2 at the time of the incidents alleged here) and Melissa P. (age 3 at the time of the incidents alleged here). A preliminary evaluation was conducted of Melissa by Yael Layish, a certified social worker. After three visits, Layish was unable to conclude that Melissa was abused. Layish continued as Melissa's therapist and after approximately seven or eight visits following the initial evaluation, Melissa stated that she had been sexually abused by her father.

The first issue raised by the appellant concerns the qualifications of the expert. Appellant contends that the qualifica-

---

* Contrary to the dissent, the trial court found Layish qualified as an expert in "child sexual abuse" as well as qualified to corroborate Melissa's out-of-court statements. The Appellate Division affirmed and we find no error of law. Moreover, in that no objection was made to Layish's testimony regarding her use of anatomically correct dolls, we cannot and do not pass on that technique. The legal arguments now raised by the dissent and by appellant were not presented at the trial level.

tions of Layish to give expert corroborative testimony were never established. Specifically, the appellant argued that Layish could give testimony about Melissa's out-of-court statements but was not qualified to give an opinion as to whether or not the child had been sexually abused, in part, because she was a social worker and not a psychiatrist or psychologist. The Family Court ruled only "that she is an expert in the area of sex—child sexual abuse". It did not specifically address the issue of her expertise in a case involving corroboration of alleged sexual abuse where there were no physical findings of sexual abuse.

This case is different from that of *Matter of Nicole V.* (123 AD2d 97, *affd* 71 NY2d 121). There, the expert's qualifications to give corroborative, opinion testimony were not challenged and she "was qualified, without objection, as an expert in counseling sexually abused children" (123 AD2d, at 99). This Court found that the out-of-court statements of the child, Nicole V., were corroborated both by the testimony of the expert and by physical evidence. Where, as here, an expert's qualifications are challenged, the appropriate course is for the expert's prior contact with similarly situated children to be considered. In this case such testimony should include the expert's prior treatment of children of similar age, alleged to have been sexually abused, where there was no physical evidence of sexual abuse. Additionally, testimony should include the expert's level of specialized training, the procedures utilized and the rationale for using them. Knowledge of methodologies generally accepted in the field is also relevant.

The second issue here involves the procedures used by an expert to determine whether or not a child has been sexually abused. Here appellant challenges the use of dolls by the expert in trying to determine if the child Melissa had been sexually abused. The use of the dolls in this case was challenged in the cross-examination of Layish when the appellant brought out that only the genitals of the dolls used were lifelike while the other features of the body, such as nose, eyes and ears, were painted on the dolls, and there were no fingers or toes. The doll procedure was also challenged in the testimony of a psychologist called by the appellant, Dr. Monty Weinstein, who was specifically asked about, and who challenged, the procedures used by Layish with respect to anatomical dolls. In his summation in the Family Court, the appellant again raised the issue of the use of dolls by Layish. One of the appellant's points in his brief submitted to the Appel-

late Division was, "The use of anatomical dolls is not a reliable indicator of sex abuse." In this Court the appellant has once again raised the issue of the improper use of dolls by Layish.

The literature indicates that the use of dolls with pronounced genitalia may or may not influence a child's reaction to the dolls and may affect the credibility of the determination that a child has been abused.[1] For these and other reasons, some courts do not permit the use of anatomical dolls in determining sexual abuse.[2] Here, there was no evidence of the acceptance or nonacceptance by the scientific community of the use of dolls in determining sexual abuse of children. The use of these dolls in the determination of sexual abuse is a controversial subject which has been clearly raised in this case and requires this Court's approval or disapproval after it appropriately weighs the opinions of the scientific community.

For these reasons, I would reverse the order of the Appellate Division and require a reopened hearing at which these issues are specifically addressed.

Chief Judge KAYE and Judges SIMONS, TITONE, BELLACOSA, LEVINE and CIPARICK concur; Judge SMITH dissents and votes to reverse in an opinion.

Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs, in a memorandum.

1. *See*, Levy, *Using "Scientific" Testimony to Prove Child Sexual Abuse*, 23 Fam LQ 383; Newman, *Assessing the Quality of Expert Testimony in Cases Involving Children*, 22 J Psychiatry & L 181, 198.

2. *Matter of Amber B.*, 191 Cal App 3d 682, 236 Cal Rptr 623 (1987); *Matter of Christie D.*, 206 Cal App 3d 469, 253 Cal Rptr 619 (1988).