■ In the Matter of DORA F., a Child Alleged to be Abused. JOHNNY F., Respondent; COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant. [657 NYS2d 655] —Order, Family Court, Bronx County (Harold Lynch, J.), entered April 3, 1996, which, after a fact-finding hearing, dismissed the petition alleging sexual abuse of the subject child by the respondent father for failure of proof, unanimously reversed, on the law and the facts, without costs, the petition reinstated, a finding of sexual abuse entered, and the matter remanded for further proceedings, including a dispositional hearing.

At the time in question, Dora F. was seven years old and lived with her godmother. This proceeding was commenced on April 18, 1995 by the filing of an abuse petition against respondent father, alleging that, on April 10, 1995, a report of suspected child abuse or maltreatment ("2221 report") was received from a doctor at Jacobi Pelham Westchester Hospital stating that it had been disclosed that, on the two previous weekends, while visiting with her father, the father fondled his daughter's breasts and genitals; on the second weekend in question he penetrated the child's vagina with his fingers and at-

tempted to insert his penis into her vagina; and that he kissed his daughter on the lips. The petition further alleges that the child told a caseworker that during the course of the weekend visit, her father touched her vagina with his hands after pulling down her panties and also put his penis into her vagina. The child also told the caseworker that the sexual acts occurred on more than one occasion. According to the doctors at Jacobi Hospital, the child had an irregular hymenal ring and other findings consistent with sexual abuse.

At the fact-finding hearing, which was conducted on eight separate dates over a period of eight months, the court unsuccessfully attempted to interview the child in camera. It then heard testimony on behalf of the petitioner from the child's two caseworkers and Dr. Jamie Rosenfeld, a pediatrician, who testified as an expert in the field of sexual abuse. The court also heard testimony from the child's mother and father.

In short, the testimony established that the child, described by both her parents as truthful, consistently told numerous people the same facts concerning the two incidents of sexual abuse by her father, including her godmother with whom she lived, her mother, the intake social worker, the caseworker assigned to her case, the Jacobi Hospital social worker and Dr. Rosenfeld. She described where on her body she was touched and the parts of his body used to touch her. The fact that she imparted a host of elaborative details and graphically described what had occurred makes it more likely than not that her allegations were not simply the product of an overactive imagination. In addition, Dr. Rosenfeld's medical findings were consistent with and provided corroboration of the child's accounts of sexual abuse.

She testified that her physical examination of Dora, which occurred two days after her last contact with her father, revealed that the tissue surrounding the opening to the vagina was irregular, that there was fresh fissuring in the area directly behind the vaginal opening, and that the skin in the area bled easily and had a loss of normal pigment. Dr. Rosenfeld asserted that the conditions she observed could have been caused by pressure upon and stretching of the genital tissue. Dr. Rosenfeld noted that the fissuring was an unusual finding in the physical examination of the genitalia of a seven year old female and was consistent with the events described by the child. While Dr. Rosenfeld stated that she could not assert with certainty that the physical findings were definitely from Dora having been fondled or penetrated, she also explained that children who have been sexually abused often have absolutely no physical symptoms at all.

In any event, even if medical evidence is inconclusive, it has been held to constitute strong corroboration of a child's statement that he or she has been sexually abused (*see, Matter of Najam M.*, 232 AD2d 281, 282 [irregular hymenal opening with thickened edges and redness of the hymen and surrounding tissue deemed " 'highly suggestive' " of sexual abuse]; *Matter of Michelle I.*, 189 AD2d 998, 1000 [redness of labia and vulva regions described by doctor as "consistent with sexual abuse" deemed sufficiently corroborative to support finding even though "this evidence did not conclusively establish" that the girls had been sexually abused]).

As such, Dr. Rosenfeld's testimony supplied ample corroboration for Dora's out-of-court statements, and, thus, a prima facie case of sexual abuse was established by the petitioner.

With regard to the medical evidence, it appears that the Family Court felt that far greater proof of vaginal trauma was necessary to establish that Dora had been sexually abused. Moreover, the court seems to have misconstrued the evidence and speculated about facts in evidence when it concluded that the irregularities the doctor found could have been caused by many things "which the doctor testified to, including simply abrasions from the child's clothing". The issue of the child's clothing was never asserted by the doctor as a possible cause of the fissuring she observed. Moreover, insofar as the court maintained that dismissal was warranted in the absence of conclusive proof of penetration, the absence of physical evidence does not preclude a finding of sexual abuse (*see, Matter of Jaclyn P.*, 86 NY2d 875; *Matter of Skye B.*, 185 AD2d 880).

Although great deference is generally accorded to credibility determinations made by the Family Court, inasmuch as it had the opportunity to hear the testimony first hand, it appears that, in finding both the father and mother credible, the court overlooked much of the evidence presented.

First, with regard to the father, whose criminal record and admission of past drug abuse already reflected on his veracity, his initial denial that Dora had visited with him in April or that he ever kissed her on the lips was retracted on cross-examination. Moreover, while admitting that she was a truthful child, he offered no rational or coherent explanation for her accusation or injuries. In fact, respondent corroborated many of the details of Dora's account, including that she slept with him in his bed; that she wore his tee shirt to bed; and that on the weekends in question she slept with him rather than with her friends in the building as was her custom. In addition, respondent admitted to engaging in highly questionable, if not

inappropriate behavior, including sleeping in the same bed with his daughter even though a cot was available, and continuing to bathe his daughter even though the medical testimony was that she was entering puberty.

Because respondent had no explanation for Dora's physical symptoms, because he admittedly engaged in behavior which was highly questionable and because his testimony was inconsistent and contradictory, his protestations of innocence should have been rejected by the Family Court.

In addition, it also appears that the Family Court erred in finding the child's mother credible and placed too much emphasis on the allegation that the child had recanted her allegations to her mother in July. At the outset, the mother's credibility was undermined by the proof that she was pressuring Dora to recant the allegations against respondent. Furthermore, the circumstances surrounding the supposed retraction are strange in that, for no apparent reason, Dora brought up the incident several months after it happened when, according to her mother's testimony, they never discussed the matter further after it happened. Moreover, despite her fear of being placed in foster care, Dora never recanted her statements to any of the medical personnel or caseworkers she dealt with. Additionally, the fact that her mother never told anyone about the purported retraction—except possibly respondent's attorney—until the day of trial, casts further suspicion upon this event.

Accordingly, where a prima facie case was established by the child's consistent out-of-court statements, which were corroborated by medical evidence suggestive of sexual abuse, and where respondent's testimony was insufficient to controvert such medical evidence or to rebut the prima facie case, a finding of sexual abuse should have been made. Concur—Sullivan, J. P., Rosenberger, Mazzarelli and Andrias, JJ.