■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY A. DE VIVO, Appellant. [726 NYS2d 145] —Carpinello, J. Appeal from a judgment of the County Court of Broome County (Smith, J.), entered June 7, 1999, upon a verdict convicting defendant of the crimes of burglary in the second degree, perjury in the first degree and criminal mischief in the third degree.

In the early morning hours of July 26, 1998, defendant, along with six other individuals, went on a rampage in search of Jermaine Fullard. Convinced that he was at the home of Britton Cannon, they went to Cannon's residence. Upon arriving, defendant ran toward the house yelling racial epithets directed at Fullard and threatening to kill him.[1] He then "crashed" through the front door, broke down other interior doors, and damaged items of personal property in the residence. Several of his companions also joined in the tirade, randomly breaking items throughout the house as they searched in vain for Fullard.[2] Over $1,500 worth of damage was done in all.

The group then retreated to a home a few blocks away where they "celebrated" about the havoc they had just caused. Within 20 minutes, however, two City of Binghamton police officers arrived after having been summoned by Cannon. At this time, defendant told each of his companions to keep their mouths shut and to tell the officers that he had been asleep in a backroom the entire night.[3] After the occupant of the home permitted the officers to enter, defendant was found feigning sleep in the back bedroom. According to these officers, defendant agreed to accompany them outside for a "show up" identification by Fullard and Cannon, who were sitting in separate police vehicles. Cannon did in fact identify defendant as a participant in the incident at this time. Defendant thereafter threatened

1. According to the testimony of two witnesses, defendant was armed with a knife at this time.

2. Both Cannon and Fullard were indeed present at Cannon's home that morning. However, upon observing the group pull up in the two vehicles, hearing the slurs and threats directed at Fullard and hearing items being broken in the house, Fullard fled on foot and Cannon ran into the downstairs apartment.

3. Defendant testified before the Grand Jury in this matter and also at trial; on both occasions, he alleged that he had no part in the incident at Cannon's home and claimed that he was asleep in the bedroom until awoken by police.

the lives of three of his accomplices, as well as the lives of their families, if they implicated him in these crimes.

Following a jury trial, defendant was found guilty of burglary in the second degree and criminal mischief in the third degree. He was also found guilty of perjury in the first degree stemming from allegations that he lied before the Grand Jury investigating the matter. Sentenced as a second felony offender to a minimum aggregate prison term of 13 years, defendant appeals. We affirm.

Defendant claims that he was deprived of a fair trial because the burglary and criminal mischief charges were improperly joined with the perjury charge, arguing specifically that joinder was an "obvious error" because the latter charge is "so fundamentally different" than the former charges. To preserve this argument for appeal, however, defendant was required to make a motion to sever the indictment (*see, People v Merritt*, 265 AD2d 733, *lv denied* 94 NY2d 826; *People v Collins [Kevin]*, 249 AD2d 410; *People v Whethers*, 191 AD2d 526, *lv denied* 82 NY2d 728; *People v Blackwell*, 156 AD2d 148, 149), which he failed to do. Thus, the argument is not properly preserved (*see, id.*). In any event, the offenses were properly joinable under CPL 200.20 (2) (b), as proof of the acts alleged in the burglary and criminal mischief charges would be material and admissible to establish the perjury charge (*see, People v Bielewicz*, 213 AD2d 966, *lv denied* 86 NY2d 790; *People v Smith [Roger]*, 115 AD2d 304). Moreover, the proof pertaining to defendant's testimony before the Grand Jury was uncomplicated and easily segregable such that it was unlikely that the jury was unable to consider the perjury testimony separately from the testimony relating to the other offenses (*see, People v Bielewicz, supra*).

Defendant also claims that his Fourth Amendment rights were violated when the investigating officers used physical force to extract him from the apartment for the purpose of the street identification by Cannon and Fullard. This argument is also unpreserved for review since defendant failed to advance it at any time prior to this appeal, particularly in his omnibus motion seeking various pretrial hearings or at the *Wade* hearing itself (*see, People v Hunte*, 276 AD2d 717; *People v Andrews*, 255 AD2d 328, *lv denied* 92 NY2d 1027; *People v Rodriguez*, 188 AD2d 564, *lv denied* 81 NY2d 892). In any event, there was no proof at the *Wade* hearing that the officers used any force whatsoever to detain or otherwise transport defendant the short distance outside. To the contrary, the only evidence concerning this matter was the testimony of these two officers whereby it was established that defendant was asked

to accompany them outside and that he voluntarily agreed to do so. We find no constitutional violation under these circumstances.

We further reject defendant's *pro se* appellate argument that there was "absolutely no evidence linking [him] to the commission of * * * the crime[s]" other than the trial testimony of four of his accomplices. In addition to their testimony, which unequivocally established defendant's participation in the incident and his actual status as the leader of the violent crusade, Cannon specifically identified defendant as one of the individuals who jumped out of a vehicle in front of his home uttering racial slurs against Fullard. Thus, defendant was certainly not convicted merely upon the uncorroborated testimony of an accomplice (*see,* CPL 60.22).

Defendant also claims that the integrity of the Grand Jury proceeding was compromised within the meaning of CPL 210.35 (5) because the very Grand Jury that handed up the burglary and criminal mischief charges also handed up the perjury charge. His failure to timely submit a written motion to dismiss on this ground, however, waives his right to a determination of the issue (*see,* CPL 210.20 [1] [c]; *People v Lopez [Salvatore],* 197 AD2d 594, *lv denied* 82 NY2d 898; *see also, People v Santmyer,* 255 AD2d 871, 871-872, *lv denied* 93 NY2d 902; *People v Sheltray,* 244 AD2d 854, *lv denied* 91 NY2d 897). In any event, in the absence of a specific showing of prosecutorial misconduct, fraudulent conduct or any other error potentially prejudicing the Grand Jury's ultimate decision (*see, e.g., People v Adessa,* 89 NY2d 677; *People v Huston,* 88 NY2d 400), there is no basis for dismissing the indictment (*compare, People v Dzeloski,* 161 Misc 2d 867).

Lastly, defendant claims that he was denied a fair trial because various witnesses were permitted to testify that he had threatened them, implored them to testify falsely and/or offered them money to change their testimony. We disagree. Evidence of such conduct is highly probative and was properly admitted as it was indicative of defendant's consciousness of guilt (*see, People v Rosio,* 220 AD2d 851, 853, *lv denied* 86 NY2d 875; *People v Sherman,* 156 AD2d 889, *lv denied* 75 NY2d 970; *see also, People v Sides,* 265 AD2d 907; *People v Gonzalez,* 253 AD2d 674, *lv denied* 92 NY2d 1049; *People v Major,* 243 AD2d 310, 311, *lv denied* 91 NY2d 928; *People v Cotto,* 222 AD2d 345, *lv denied* 88 NY2d 846). We have reviewed defendant's remaining contentions, including those raised in his *pro se* appellate brief, and find them to be equally without merit.

Cardona, P. J., Crew III, Peters and Spain, JJ., concur. Ordered that the judgment is affirmed.