*571 OPINION OF THE COURT
Ira R. Globerman, J.
During the trial of this matter I admitted medical records of three child complainants which identified the defendant as the perpetrator of the injuries described therein. This opinion is being filed in support of that decision.
Three children, unbathed, having matted hair, clothes torn and dirty, showing signs of recent injury and scars on their arms and backs, the girl complaining also of sexual abuse, were brought to the police station by their mother. After being taken to an emergency room, the children were referred to a pediatrician who specialized in treating patients at risk for physical and sexual abuse. The doctor examined each child to ascertain his or her present condition and to determine if any treatment was necessary. Thereafter, the defendant was charged with raping and physically assaulting his seven-year-old daughter and with assaulting his two sons, aged six and eight.
At trial, the People sought to offer into evidence portions of the doctor’s medical records pertaining to her examination of the children. At issue were three enlarged diagrams, each of which depicts a sketch of a young child’s form — a girl for the female complainant — and boys for the two male complainants. On each of the diagrams the respective child’s injuries are delineated alongside a note as to how that injury was sustained and who inflicted it. The defendant objected to the admission of any entries that named the defendant as the person who caused the injury. I ruled that the diagrams in their entirety were admissible as medical records inasmuch as the information contained therein was relevant to the treatment and diagnosis of each of the children.
Pursuant to CPLR 4518, made applicable to criminal cases by CPL 60.10 (see, e.g., People v Cratsley, 86 NY2d 81 [1995]; People v Kennedy, 68 NY2d 569 [1986]), business records are admissible as an exception to the hearsay rule. As the Kennedy Court recognized, “[t]he essence of the business records exception to the hearsay rule is that records systematically made for the conduct of a business as a business are inherently highly trustworthy because they are routine reflections of day-to-day operations and because the entrant’s obligation is to have them truthful and accurate for purposes of the conduct of the enterprise.” (Kennedy, supra at 579.) The term “business” has been broadly interpreted and encompasses records that a hospital keeps in diagnosing and treating patients. (Williams v *572 Alexander, 309 NY 283 [1955].) As the Court of Appeals recognized in Davidson v Cornell (132 NY 228, 237 [1892]), the original source of the current New York rule, “when attended by a physician for the purpose of treatment there is a strong inducement for the patient to speak truly of his pains and sufferings * * * .” (See also, Barker and Alexander, Evidence in New York State and Federal Courts § 803[1].1 [1996].) Further, it is well settled that where the hearsay exception is justified by adequate “indicia of reliability,” as in the business records exception, the evidentiary rule does not conflict with the defendant’s right to confront witnesses guaranteed by the Federal and New York State Constitutions. (People v James, 93 NY2d 620, 641 [1999]; People v Vanterpool, 214 AD2d 429 [1st Dept], lv denied 86 NY2d 875 [1995].) Accordingly, hospital records are generally admissible under the business records exception to the hearsay rule as long as the information sought to be admitted is relevant to the diagnosis and treatment of the patient’s ailment. Williams v Alexander, supra; see also, People v Jackson, 124 AD2d 975 [4th Dept 1986]; People v Davis, 95 AD2d 837 [2d Dept 1983].)
Thus, courts have found that statements describing the way in which an injury was sustained may, under certain circumstances, come within the business records exception. In Williams v Alexander (supra at 288), the Court recognized that, “[i]n some instances, perhaps, the patient’s explanation as to how he was hurt may be helpful to an understanding of the medical aspects of his case * * * .” (See, People v Dennee, 291 AD2d 888 [4th Dept] [doctor’s testimony regarding the victims’ descriptions to him of the manner in which they were injured was admissible because such descriptions were germane to the doctor’s treatment of the victims]; People v Thomas, 282 AD2d 827 [3d Dept 2001] [doctor’s testimony that the victim told him that she had been punched and choked was deemed admissible because this information was relevant to diagnosis and treatment]; People v Bailey, 252 AD2d 815 [3d Dept 1998] [statement in a hospital record to the effect that “(t)he patient states that yesterday (a person) kissed and sucked on her neck and placed his penis between her legs” relevant to diagnosis and treatment]; People v Torres, 175 AD2d 635, 636 [4th Dept 1991] [gynecologist’s testimony that the complainant had told him she had been “roughed up” was properly admissible as relevant to the doctor’s diagnosis and treatment]; see also, People v Swinger, 180 Misc 2d 344 [Crim Ct, NY County 1998], and cases cited therein; but see, People v Harrison, 176 AD2d 1199 [4th Dept 1991] [testimony by emergency room physician about *573 victim’s statements concerning rape constituted improper bolstering]; People v Barnes, 144 AD2d 995 [4th Dept 1988] [admitting narrative of assault given to the emergency room physician was improper].)
Although New York courts have often admitted record entries setting forth the manner in which injuries were inflicted to the patient, decisions considering entries naming the person inflicting those injuries are more restrictive. In fact, it appears that a substantial majority of the courts of this state that have addressed the issue of the admissibility of an identification of a perpetrator contained in a medical record have concluded that such evidence is not admissible on the grounds that, under the facts of those cases, the identity of the perpetrator was not necessary for treatment and diagnosis of the victim. (See, e.g., People v Thomas, supra [portion of statement identifying defendant as perpetrator of assaultive behavior not relevant to diagnosis and treatment and should have been excluded]; People v Tarver, 161 AD2d 1162 [4th Dept 1990] [error to permit emergency room physician to testify about statements made to her by rape victim regarding identity of perpetrator and the manner in which the victim and perpetrator slept together the night before]; People v Harris, 132 AD2d 940 [4th Dept 1987] [error to permit examining physician to testify with respect to statements made to him by rape victim regarding location of alleged attack and identity of perpetrator].)
However, a careful analysis of the issues that arise in cases involving child sexual or physical abuse reveals that the identity of the perpetrator plays a central role in the treatment of the victim. In these cases, the abuser is often a household member, or someone else the child knows and trusts, who serially abuses the victim over an extended period of time, with increasing frequency and degree. Where the abuser is in a trusted or loving relationship with the victim, grave psychological consequences are visited on the abused in addition to the physical injury inflicted. (See, Roland C. Summit, M.D., The Child Sexual Abuse Accommodation Syndrome, 7 Child Abuse & Neglect 177-193 [1983]; David Finkelhor, Current Information on the Scope and Nature of Child Sexual Abuse, 4 The Future of Children No. 2 [1994]; Child Maltreatment, US Dept of Health & Human Servs [1999].) Given that a pediatrician’s primary obligation is to protect the child patient (103 Pediatrics No. 1 [Jan. 1999]), determining the identity of the person who inflicted the injuries is of paramount significance to the treat *574 ment and protection of that child.[2]
In the instant case, three children said to have been the victims of physical and sexual abuse at the hands of their father with whom they lived were referred from the emergency room to a pediatrician who specialized in child abuse. The doctor, who testified at trial, performed thorough individual examinations to determine the state of the children’s health and prescribe any necessary treatment. During the examination, as she noted physical injuries to each of their bodies, she asked with respect to that injury, “What happened, how did this mark get there?”[3] Such queries were necessary because the physician treating child abuse not only attends to physical injury, but must also evaluate the need for additional treatment, including mental health referrals. (103 Pediatrics No. 1 [Jan. 1999].) In other words, the treating physician, “must be attentive to treating the emotional and psychological injuries which accompany this crime. * * * The exact nature and extent of the psychological problems which ensue from child abuse often depend on the identity of the abuser.” (United States v Renville, 779 F2d 430, 437 [8th Cir 1985]; see also, People v Moten, 2001 WL 985815, 2001 Mich App LEXIS 2641 [Mich Ct App, Aug. 28, 2001] [child victim’s statements to doctor advising of the assault and identifying the defendant as the assailant were for purposes of medical treatment and diagnosis and necessary to develop a comprehensive treatment plan for the child].)
Moreover, where, as in this case, the agent of the harm is a member of the child’s household, sending the child back to the home would undoubtedly be hazardous to the child who is in no position to protect him or herself. Information that the *575 abuser lives with the victim would, accordingly, be necessary to effective treatment which would likely include removing the child from the home to prevent further injury. (United States v Renville, supra at 438; see also, Department of Social Servs. v Williams, 144 Mich App 475, 376 NW2d 139 [1985] [since sexual abuse of child was inflicted by a family member revelation of that fact was necessary to the treatment of the child which would include the doctor taking action to prevent the abuse from recurring in the future].)
Finally, as is the case with any sexual assault involving vaginal penetration, including the instant case, there was a possibility that a child may contract a communicable venereal disease from the perpetrator. Therefore, the identity of the perpetrator is medically significant for this aspect of the treatment as well. (See, e.g., In re Rachel T., 77 Md App 20, 549 A2d 27 [Ct Spec App 1988].)
Despite the fact that there appear to be compelling reasons to admit hospital records naming the perpetrator of crimes involving child abuse, research has disclosed only one case in New York State wherein this issue has been addressed. In People v Caccese (211 AD2d 976 [3d Dept 1995]), the Court held, without explication, that it was proper for a nurse to testify that the child victim had told her that his foster mother, the defendant, had caused the bruises on his hand because such information was germane to the child’s diagnosis and treatment. While the Court did not articulate precisely how this information was relevant to diagnosis and treatment, presumably it was because if the injuries to the child were received at the hands of the person with whom he lived, part of the treatment would be to remove the child from that environment to ensure his safety.[4]
The admissibility of records identifying a perpetrator of child abuse finds additional support in the case of People v Swinger (supra), which held that hospital records naming the defendant as the “batterer” of his wife were found to be admissible. Although the case did not deal with child abuse, the analysis employed in the case is analogous to the position this court has taken. The Swinger court held that the medical records which included statements by the complainant that she was “as *576 sault[ed] by her husband” and that she was “assault [ed] by husband, sustaining fist blows to [her] head, arms [and] back” and that she was “being beaten up by [her] husband,” were admissible (at 345). The court reasoned that in this case the manner in which the injury was inflicted and by whom was significant because, “the treatment of a domestic violence victim’s apparent physical injuries is closely associated with the victim’s emotional well-being. Unlike other types of assault, domestic violence results not only in physical injuries to its frightened and battered victims but also will have a traumatic impact on the victims’ psychological well-being. Battered Woman Syndrome has become a recognized diagnosis.” (People v Swinger, supra at 349.) Therefore, it appears that where a patient is identified as a domestic violence victim, naming the person responsible for the injuries to the victim is relevant to the patient’s diagnosis and treatment. Likewise, for victims of child abuse, effective treatment requires the relationship of a perpetrator to the victim be addressed.
In sum, I find that admission of the diagrams was proper inasmuch as they qualified as evidence under the business exception to the hearsay rule. The children’s statements to the doctor of how they were injured and by whom were unquestionably necessary for proper diagnosis and treatment.

. I am aware that at least one commentator has questioned whether sufficient “indicia of trustworthiness” are present to justify receipt of medical records naming a perpetrator of child abuse where the circumstances of the medical interview do not clearly indicate that it was being conducted for the purposes of immediate treatment, an issue not raised by the facts of this case. (See, Robert P. Mosteller, The Maturation and Disintegration of the Hearsay Exception for Statements for Medical Examination in Child Sexual Abuse Cases, 65 Law & Contemp Probs 47 [Winter 2002].)

. It should be noted that “[t]he most important determinant for abuse is the child’s account of the incident.” (3 Emedicine Journal No. 1 [Jan. 14, 2002].) In order to learn from the child what occurred, “[i]t is desirable for those conducting the interview to use nonleading questions; avoid showing strong emotions such as shock or disbelief; and maintain a ‘tell me more’ or ‘then what happened’ approach.” (103 Pediatrics, supra.) This is precisely what the doctor in this case did.

. I note also that in a subsequent case not involving the abuse of a child the Court held that the identity of the perpetrator was not relevant to diagnosis or treatment, the court recognized that “the facts [in Caccese were] sufficiently distinguishable from the facts of this case.” (People v Thomas, supra at 828 n.) Again, the Court failed to expound on its reasoning.