(June 19, 2003)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAFAEL RODRIGUEZ, Appellant. [761 NYS2d 368] —Cardona, P.J. Appeal from a judgment of the County Court of Albany County (Rosen, J.), rendered March 5, 1999, upon a verdict convicting defendant of the crimes of assault in the first degree, criminal contempt in the first degree (three counts), criminal possession of a weapon in the fourth degree and menacing in the second degree (two counts).

Approximately one week before February 23, 1998, the complainant, Maria Ortiz, told defendant, her boyfriend, that she did not want to be with him anymore. Despite an order of protection requiring defendant to stay away from her, he continued to reside at her residence with her at 664 State Street in the City of Albany. During the evening hours of February 23, 1998, defendant returned to the residence and entered the bedroom brandishing a kitchen knife. He placed the knife to Ortiz's throat, threatened to kill her, and indicated that he was tired of hearing that she did not want to be with him. Defendant told her that if she was not with him, she would be with no one. Defendant poked at her repeatedly with the knife using it to tear her blouse. She told him she loved him to calm him down and, when he was distracted, she telephoned her older son, Danny, for help. Danny and his roommate, Edwin Cruz, came over immediately, confronted defendant and told him to leave. The altercation escalated when, after threatening to kill the unarmed Cruz, defendant stabbed

him in the chest. After Danny and defendant struggled, defendant left. He was apprehended a few blocks away from the Ortiz home. The next day, while in police custody, defendant called Ortiz three times threatening to kill her and her son unless she dropped the charges.

Defendant was indicted on April 21, 1998 and charged with attempted murder in the second degree, assault in the first degree, burglary in the first degree (three counts), criminal contempt in the first degree (three counts), criminal possession of a weapon in the third degree, menacing in the second degree (two counts) and criminal contempt in the second degree. Defendant's pretrial motion to dismiss the indictment for violation of his statutory right to a speedy trial (*see* CPL 30.30 [1] [a]) was denied. Following a jury trial, defendant was convicted of assault in the first degree, three counts of criminal contempt in the first degree, criminal possession of a weapon in the fourth degree and two counts of menacing in the second degree and sentenced to an aggregate indeterminate prison term of 10 to 20 years.

Defendant argues that he was denied his statutory right to a speedy trial because the People were not ready to proceed to trial when they announced their readiness at his arraignment on April 24, 1998, as demonstrated by their subsequent request on October 9, 1998 for an adjournment of the trial scheduled for November 2, 1998, in order to obtain certain DNA evidence. Contrary to defendant's argument, we find the People's announcement of readiness on April 24, 1998 was not illusory. At that time, the record shows that they completed "all that [was] required of them to bring the case to the point where it [could] be tried" (*People v McKenna*, 76 NY2d 59, 64 [1990]; *see People v England*, 84 NY2d 1, 4 [1994]). In our view, while the People's desire to secure additional evidence may have impaired defendant's ability to proceed with the trial, it had no bearing on their readiness and, therefore, did not constitute a direct impediment to the trial's commencement (*see People v England, supra* at 3-5; *People v McKenna, supra* at 64). Since none of the time between April 24, 1998 and October 9, 1998 was chargeable to the People, nor the period between October 9, 1998 and January 4, 1999, when the decision on the suppression motion was pending (*see* CPL 30.30 [4] [a]; *People v Boomer*, 220 AD2d 833, 836 [1995], *lv denied* 89 NY2d 919 [1996]), defendant's speedy trial argument fails (*see People v England, supra* at 5; *People v McKenna, supra* at 64).

Next, we do not agree with defendant's argument that County Court erred in its ruling that the People could introduce

limited evidence of defendant's uncharged bad acts, namely, threatening phone calls made to Ortiz the day after his arrest, another such call to Danny on April 8, 1998 and the circumstances resulting in the issuance of the order of protection. Because that evidence completed the narrative in which the criminal acts occurred, tended to show the absence of accident (*see People v Watson*, 281 AD2d 691, 694 [2001], *lv denied* 96 NY2d 925 [2001]) and "was indicative of defendant's consciousness of guilt" (*People v De Vivo*, 282 AD2d 770, 772 [2001], *lv denied* 96 NY2d 900 [2001]), its probative value outweighed its potential for prejudice.

We now address defendant's contention that he was denied a fair trial because County Court did not instruct the jury as to the defense of justification. Entitlement to that charge requires that "there must have been some reasonable view of the evidence presented that defendant reasonably believed that deadly force was being used or about to be used against him and that [he] was unable to safely retreat" (*People v Counts [Q.]*, 214 AD2d 897, 898 [1995], *lvs denied* 86 NY2d 792, 800 [1995]; *see* Penal Law § 35.15 [2]). An examination of the trial testimony, in the light most favorable to the defense, reveals that when Cruz was stabbed, only defendant possessed a knife. Neither Danny nor Cruz possessed a weapon or a dangerous instrument and neither individual threatened the use of deadly force. Therefore, neither could be viewed as the initial aggressor (*see People v Carello*, 241 AD2d 903, 905 [1997], *lv denied* 90 NY2d 938 [1997]). Furthermore, there is no proof "that defendant attempted to retreat or that he was unable to do so with complete safety to himself" (*People v Counts [Q.], supra* at 898). Accordingly, County Court properly refused to give the requested charge.

We turn to defendant's argument that County Court improperly admitted the 911 tape of a call from the Ortiz residence on the night of February 23, 1998. The caller was Ortiz's 13-year-old son, Harry. The People offered the 911 tape under the excited utterance exception to the hearsay rule. They did not, however, call Harry as a witness. Based upon our review of the record, we find that the 911 call was made during the stress of a startling event which was "sufficiently powerful to render the observer's normal reflective processes inoperative" (*People v Vasquez*, 88 NY2d 561, 574 [1996]; *see People v Brown*, 70 NY2d 513, 519 [1987]). Accordingly, the 911 call qualified as an excited utterance exception to the hearsay rule.

"The Supreme Court has developed a two-part test 'for determining when incriminating statements admissible under

an exception to the hearsay rule also meet the requirements of the Confrontation Clause' " (*People v James*, 93 NY2d 620, 641 [1999], quoting *Idaho v Wright*, 497 US 805, 814 [1990]; *see Ohio v Roberts*, 448 US 56, 65 [1980]). First, the prosecution must demonstrate that the declarant is unavailable to testify. Second, the statement must bear adequate indicia of reliability (*see Idaho v Wright, supra* at 815; *People v James, supra* at 641). Here, the second part of the test was satisfied by the fact that the tape of the 911 call fell within "a firmly rooted hearsay exception" (*Idaho v Wright, supra* at 815; *see Ohio v Roberts, supra* at 66; *People v James, supra* at 641)—the excited utterance (*see United States v Nick*, 604 F2d 1199 [1979]; *People v Nieves*, 67 NY2d 125, 131 n 2 [1986]). However, the People failed to satisfy the first part by demonstrating Harry's unavailability to testify. Therefore, we find that the admission of the 911 tape violated defendant's constitutional rights of confrontation (*see* US Const 6th Amend; NY Const, art I, § 6). Although the tape was improperly admitted, we nevertheless find "there is no reasonable possibility that the error might have contributed to the conviction," given that the People's case was based upon eyewitness testimony and physical evidence which was "essentially unimpeached" (*People v Ayala*, 75 NY2d 422, 431-432 [1990]).

Finally, addressing defendant's argument that his sentence was harsh and excessive, we find that, given the nature of his crimes, County Court did not abuse its sentencing discretion, nor do we find any extraordinary circumstances warranting a modification of his sentence in the interest of justice (*see* CPL 470.15 [3] [c]; [6] [b]).

Mercure, Spain, Rose and Kane, JJ., concur. Ordered that the judgment is affirmed.