Rafael **RODRIGUEZ,** Petitioner,

v.

**SUPERINTENDENT, COLLINS CORRECTIONAL FACILITY,** Respondent.

No. 9:04–CV–1137 (DNH).

United States District Court, N.D. New York.

April 28, 2008.

Rafael Rodriguez, Sonyea, NY, pro se.

Hon. Andrew M. Cuomo, Office of the Attorney General, Michael G. McCartin, Esq., Ass't Attorney General, Albany, NY, for Respondent.

### MEMORANDUM–DECISION and ORDER

DAVID N. HURD, District Judge.

## I. Background

### A. State Court Proceedings

According to the testimony adduced at trial, on or about January 4, 1997, Maria Ortiz ("Ortiz") was the girlfriend of the petitioner, Rafael Rodriguez ("Rodriguez" or "petitioner"). Dkt. No. 12, Ex. 1, Transcript of Trial of Rafael Rodriguez ("Trial Tr."), at 289–90. Ortiz left the home they shared to go shopping, and petitioner followed her. He got on the same bus, sat behind Ortiz, and harassed her. When Ortiz told him she did not want to be with him, petitioner pulled her hair and punched her face. *Id.* at 290–91. As a result of the incident, an order of protection was issued against Rodriguez on Jan-

uary 7, 1997. Dkt. No. 12, Ex. 2, Attach. at R–8 (Indictment).

In September 1997, petitioner moved in with Ortiz even though the order of protection was still in effect. Ortiz testified that she permitted him to live with her because she was afraid of him. Trial Tr. at 293–94, 334–35. Approximately six months later, Ortiz again told petitioner that she did not want to be with him. *Id.* at 293. On February 23, 1998, he entered Ortiz's bedroom "brandishing a kitchen knife." *Rodriguez,* 306 A.D.2d at 686, 761 N.Y.S.2d 368; Trial Tr. at 296–97. He put the knife to Ortiz's throat, threatened to kill her, and told her that if she was not with him, she would be with no one. Trial Tr. at 297. Petitioner used the knife to cut Ortiz's neck and also cut her shirt open. Ortiz told him she loved him in an effort to calm him down. *Id.* at 297–301. Ortiz's children, Harry and Henry Ortiz (both fourteen years old), were home during this incident. *Id.* at 288, 301–02.

Ortiz called her son, Louis Danny Ortiz ("Danny"), for help. Danny and his roommate, Edwin Cruz ("Cruz"), immediately came to the Ortiz home, confronted petitioner, and told him to leave. Danny and Cruz were unarmed. Trial Tr. at 303–04, 396–403, 493. Petitioner called Damian Rodriguez and asked him to pick petitioner up. *Id.* at 535–45. Petitioner then refused to leave the house until he finished his beer. The incident escalated when petitioner threatened to kill Cruz and stabbed him in the left chest. *Id.* at 307–311, 406–412, 488–99. Danny and petitioner continued to struggle, and eventually

petitioner left the house. *Id.* at 412–20, 423–30. Harry Ortiz called 911. *Id.* at 434, 439–40. Henry Ortiz, who was standing near the dining room, picked up a knife after petitioner left the house. *Id.* at 434–35. Police recovered the knife from the Ortiz home, along with a knife that Danny Ortiz was holding when they arrived. *Id.* at 145–46,155,167–69,434–45.

Petitioner was apprehended a few blocks from the house. Police recovered a knife from him, and laboratory tests confirmed that Cruz's blood was on the knife. Trial Tr. at 240–52, 269–73, 283–84. As a result of the stabbing, Cruz suffered a ruptured lung and three wounds to his heart. Trial Tr. at 211–15, 221–28. Without surgery, there was a "significant likelihood that this would have been a lethal wound." *Id.* at 228.

An indictment was returned charging petitioner with second degree attempted murder, (N.Y. Penal Law §§ 110.00/125.25(1)); first degree assault (N.Y. Penal Law § 120.10(1)); first degree burglary (three counts)(N.Y. Penal Law §§ 140.30(2)(3)); first degree criminal contempt (three counts) (N.Y. Penal Law §§ 215.51(b)(I), 215.51(b)(vi), 215.51(b)(v)); third degree criminal possession of a weapon (N.Y. Penal Law § 265.02(1)); second degree menacing (three counts) (N.Y. Penal Law § 120.14(1)); and second degree criminal contempt (N.Y. Penal Law § 215.50(3)).[1] Petitioner was represented at trial by Assistant Public Defender Gaspar M. Castillo, Jr.

On October 9, 1998, a *Huntley*[2] hearing was held. At the hearing, Rodriguez chal-

---

**1.** Unless otherwise indicated, all references to the New York Penal Law are to McKinney 1998.

**2.** *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965). A *Huntley* hearing is conducted to determine whether a defendant's statements to the police must be suppressed on the grounds that

he was subjected to custodial interrogation without the warnings required under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See Harris v. New York,* 202 F.Supp.2d 3, 4 & n. 3 (S.D.N.Y.2001); *see also* New York's Criminal Procedure Law ("N.Y.Crim.Proc.Law") § 710.

lenged the admissibility of the knife he was carrying when he was arrested. Dkt. No. 12, Ex. 1, Suppression Hrg. at 5–6. The prosecutor conceded that his statement was made in response to custodial inquiry and withdrew the notice of intent to use the statement at trial. Dkt. No. 12, Ex. 1, Suppression Hrg. at 3–6. In a written Decision and Order, the trial court ruled that the knife recovered from petitioner was seized pursuant to a lawful arrest and was therefore admissible. Dkt. No. 12, Ex. 2, Attach. at R46 (Decision and Order, Rosen, J.).

Rodriguez was tried before a jury on the charges in Albany County Court with County Court Judge Larry J. Rosen presiding. Prior to the commencement of trial, the three burglary charges and the second degree criminal contempt charge (Counts 3 and 9–11 of the Indictment) were dismissed in the interest of justice. Trial Tr. at 12–13. At the close of the proof, the trial court reduced the third degree criminal possession of a weapon charge to fourth degree criminal possession of a weapon. Trial Tr. at 581. The jury began its deliberations on January 15, 1999, and returned a unanimous verdict which acquitted petitioner of attempted murder and found him guilty of the remaining charges. *Id.* at 747–55. On March 5, 1999, petitioner was sentenced to an aggregate indeterminate term of ten to twenty years in prison. Dkt. No. 12, Ex. 1, Sentencing Tr. at 12–13.

Petitioner appealed his conviction and the Appellate Division, Third Department, affirmed. Dkt. No. 12, Ex. 2, 5; *People v. Rodriguez*, 306 A.D.2d 686, 761 N.Y.S.2d 368 (3rd Dept.2003). On September 30, 2003, the New York Court of Appeals denied petitioner leave to appeal. *People v. Rodriguez*, 100 N.Y.2d 624, 767 N.Y.S.2d 407, 799 N.E.2d 630 (2003).

Petitioner filed a state writ of error *coram nobis* on January 22, 2004, in which he challenged the effectiveness of appellate counsel for failing to challenge the trial court's jury instruction on intent. Dkt. No. 12, Ex. 8. The Appellate Division denied the writ on April 7, 2004. Dkt. No. 12, Ex. 10.

### B. *Proceedings in This Court*

Petitioner filed a petition for a writ of *habeas corpus* on September 29, 2004. *See* Dkt. No. 1. By Order filed October 25, 2004, his application to proceed *in forma pauperis* was granted, and the respondent was ordered to file his response to the petition. Dkt. No. 5. On February 4, 2005, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed a response and memorandum of law in opposition to the petition, along with the relevant state court records. *See* Dkt. No. 12.

Petitioner raises the following grounds for relief: (1) the 911 call was improperly played for the jury; (2) his statutory right to a speedy trial was violated; (3) the trial court erred when it denied his request for a jury charge on justification; (4) the trial court improperly admitted evidence of his prior bad acts; (5) the sentence imposed was excessive; (6) appellate counsel was ineffective (Grounds Six and Seven); and (7) the trial court's jury instruction on intent was inadequate. Dkt. No. 1, Pet. at pp. 5–6, 8–10. For the reasons that follow, the petition is denied.

### II. *Discussion*

#### A. *Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner on a claim unless state courts adjudicated the merits of the claim and such adjudication either:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir.2006), *cert. denied* — U.S. —, 127 S.Ct. 1267, 167 L.Ed.2d 92 (2007); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir.2005), *cert. denied* 546 U.S. 884, 126 S.Ct. 225, 163 L.Ed.2d 189 (2005); *Miranda v. Bennett*, 322 F.3d 171, 177–78 (2d Cir.2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir.2001).

The AEDPA also requires that in any habeas proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Boyette*, 246 F.3d at 88 (quoting § 2254(e)(1)).

A state court determines a petitioner's federal claim "on the merits" and triggers the highly-deferential AEDPA standard of review when the state court (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment. *See Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir.2001). In this regard, it is not necessary for the state court to explicitly refer to the particular federal claim or to any federal case law. *See Id.*

If, however, a state court does not adjudicate a petitioner's federal claim "on the merits," the state court's decision is not entitled to AEDPA deference, and instead, the federal *habeas court* must apply the pre-AEDPA standard of *de novo* review to the state court's disposition of the federal claim. *See Cotto v. Herbert*, 331 F.3d 217,

230 (2d Cir.2003) (citing *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir.2001)).

## B. *Admission of the 911 call*

Petitioner first claims that the trial court improperly permitted a 911 call to be played for the jury. Dkt. No. 1 at 5. Respondent argues that even if playing the 911 call constituted a violation of the confrontation clause, the Appellate Division's application of harmless error analysis to this claim was proper, and habeas relief should be denied. Dkt. No. 12, Respondent's Memorandum of Law ("Resp't Mem."), at 6–8.

### 1. *Clearly Established Supreme Court Precedent:*

The Confrontation Clause of the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const., amend. VI. Prior to the Supreme Court's ruling in *Crawford v. Washington*, 541 U.S. 36, 68–69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), hearsay statements were admissible, despite a defendant's inability to confront the declarant, if the declarant was "unavailable" to testify and the statement bore "adequate 'indicia of reliability.'" *Lilly v. Virginia*, 527 U.S. 116, 124–25, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999)(quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)); *Toland v. Walsh*, 04–CV–773, 2008 WL 65583, at *19 (N.D.N.Y. Jan.4, 2008)(Sharpe, D.J.). Reliability could be established by "a showing of particularized guarantees of trustworthiness," or be inferred from the fact that the evidence fell "within a firmly rooted hearsay exception." *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531.

In 2004, the Supreme Court overruled *Roberts* and decided in *Crawford* that any out of court statement is inadmis-

sible unless the declarant is unavailable and the defendant had an opportunity to cross-examine the declarant, regardless of whether the statement is deemed reliable by the trial court. *Crawford,* 541 U.S. at 68–69, 124 S.Ct. 1354. *Crawford,* however, was decided after petitioner's conviction became final on December 29, 2003, and the Supreme Court has held that *Crawford* does not apply retroactively on habeas review. *Whorton v. Bockting,* —— U.S. ——, 127 S.Ct. 1173, 1183–84, 167 L.Ed.2d 1 (2007). *See U.S. v. Becker,* 502 F.3d 122, 129–30 (2d Cir.2007)(citing *Whorton*). Accordingly, "clearly established precedent" relevant to petitioner's claim does not include *Crawford. See Williams v. Taylor,* 529 U.S. 362, 390, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("clearly established Federal law, as determined by the Supreme Court," is that in effect when a petitioner's conviction became final).

### 2. *Contrary to, or an unreasonable application of clearly established Supreme Court Precedent*

The Appellate Division ruled that the 911 call, made by Ortiz's 13 year-old son[3], Harry, "was made during the stress of a startling event which was 'sufficiently powerful to render the observer's normal reflective processes inoperative,'" and therefore qualified as an excited utterance. *Rodriguez,* 306 A.D.2d at 688, 761 N.Y.S.2d 368 (quoting *People v. Vasquez,* 88 N.Y.2d 561, 574, 647 N.Y.S.2d 697, 670 N.E.2d 1328 (1996)). The court then analyzed whether the 911 call was admissible under then-established Supreme Court precedent:

The Supreme Court has developed a two-part test 'for determining when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the *Confrontation Clause*' (*People v. James,* 93 N.Y.2d 620, 641 [695 N.Y.S.2d 715, 717 N.E.2d 1052 (1999)], quoting *Idaho v. Wright,* 497 U.S. 805, 814 [110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)]; *see Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531 [1980] ). First, the prosecution must demonstrate that the declarant is unavailable to testify. Second, the statement must bear adequate indicia of reliability (*see Idaho v. Wright, supra* at 815 [110 S.Ct. 3139]; *People v. James, supra* at 641, 695 N.Y.S.2d 715, 717 N.E.2d 1052).

*Rodriguez,* 306 A.D.2d at 688–89, 761 N.Y.S.2d 368. Since the 911 call fell within the "firmly rooted hearsay exception" of excited utterance, the Appellate Division ruled that the second part of the Supreme Court's test was met. *Id.* at 689, 761 N.Y.S.2d 368 (quoting *Idaho v. Wright,* 497 U.S. at 815, 110 S.Ct. 3139). But because the People failed to establish that Harry was unable to testify, the Appellate Division ruled that the admission of the 911 call violated petitioner's constitutional right of confrontation. *Id.* at 689, 761 N.Y.S.2d 368.

■ The excited utterance exception to the hearsay rule permits the admission into evidence of statements made "in a moment of excitement—without the opportunity to reflect on the consequences of one's exclamation." *Brown v. Keane,* 355 F.3d 82, 90 (2d Cir.2004)(quoting *White v. Illinois,* 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)). *See Mungo v. Duncan,* 393 F.3d 327, 331 (2d Cir.2004), *cert. denied* 544 U.S. 1002, 125 S.Ct. 1936, 161 L.Ed.2d 778 (2005); *People v. Cotto,* 92 N.Y.2d 68, 78–79, 677 N.Y.S.2d 35, 699 N.E.2d 394 (1998). The "excited utter-

---

**3.** Maria Ortiz testified that both Harry and Henry were 14 years old at the time of this incident. Trial Tr. at 288.

ance" hearsay exception is "firmly rooted." *Brown,* 355 F.3d at 89–90 (citing *Lilly,* 527 U.S. at 126, 119 S.Ct. 1887). The record reveals that Harry was present in the house during the altercation, that he called police after petitioner left the home, and that during the call, Ortiz could be heard screaming in the background. Trial Tr. at 301, 437–39. These circumstances support the Appellate Division's finding that the call was made under the "stress of a startling event" and therefore qualified as an excited utterance. Its determination that the 911 call should not have been played for the jury because the People failed to demonstrate that Harry was unavailable to testify was not contrary to or an unreasonable application of clearly established federal law. *Idaho v. Wright,* 497 U.S. at 815, 110 S.Ct. 3139; *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531.

■ The same is true of the Appellate Division's ruling that the constitutional error was harmless. A constitutional error in a state-court criminal trial is harmless as long as it did not have a "substantial and injurious effect" on the jury's verdict. *Fry v. Pliler,* —— U.S. ——, 127 S.Ct. 2321, 2328, 168 L.Ed.2d 16 (2007)(citing *Brecht v. Abrahamson,* 507 U.S. 619, 631, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). *See Rice v. Senkowski,* No. 04–CV–335, 2007 WL 2789504, at *6 (N.D.N.Y. Sept. 24, 2007)(Kahn, D.J., and Peebles, M.J.); *Pearson v. Ercole,* No. 06–CV–5315, 2007 WL 2128350, at *6 (E.D.N.Y. Jul. 25, 2007). This standard of review applies regardless of whether the state court, as it did here, recognized and analyzed the error under the "harmless beyond a reasonable doubt" standard enunciated in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Fry,* 127 S.Ct. at 2328; *Timberlake v. Taylor,* No. 04–CV–2846, 2008 WL 756160, at *3 (S.D.N.Y. Mar. 20, 2008); *Toland,* 2008 WL 65583, at *18–19. *See Rodriguez,* 306 A.D.2d at 689, 761 N.Y.S.2d 368 (using language that

"there is no reasonable possibility that the error might have contributed to the conviction," which mirrors that in *Chapman,* 386 U.S. at 24, 87 S.Ct. 824).

■ The Appellate Division stated that '[a]lthough the tape was improperly admitted, we nevertheless find "there is no reasonable possibility that the error might have contributed to the conviction,' given that the People's case was based upon eyewitness testimony and physical evidence which was 'essentially unimpeached.'" *Id.* (quoting *People v. Ayala,* 75 N.Y.2d 422, 431–432, 554 N.Y.S.2d 412, 553 N.E.2d 960 (1990)). That determination is supported by the record, and is entitled to AEDPA deference.

The record shows that the proof of petitioner's guilt was overwhelming. The testimony established that Cruz and Danny were unarmed when petitioner stabbed Cruz. Trial Tr. at 407–08, 493–94. Police recovered a knife from petitioner that tested positive for Cruz's blood. *Id.* at 283–84. The evidence further established that petitioner threatened Ortiz with a knife and cut her neck and blouse. *Id.* at 148–50, 296–302, Petitioner stipulated that there had been a valid order of protection in place at the time. *Id.* at 62–63. Ortiz, Danny, and Cruz testified at trial and were subject to vigorous cross-examination. *Id.* at 321–91, 443–77, 500–518, 521. The prosecutor highlighted the 911 tape as only one of several important pieces of evidence she stressed during her lengthy summation. *Id.* at 629–75. In light of the overwhelming evidence of petitioner's guilt, the 911 call did not have a "substantial and injurious effect" on the jury's verdict. The Appellate Division's determination that the admission of the 911 call was harmless error was therefore not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, and this claim is dismissed.

## C. Speedy Trial

Petitioner next claims that his statutory right to a speedy trial was denied. Dkt. No. 1, at 5. Respondent argues that because petitioner is asserting a violation of a state law-based statute, it is not cognizable on federal habeas review. *See* Dkt. No. 12, Resp't. Mem., at 9–11. Respondent also argues that any constitutional speedy trial claim is unexhausted because no such claim was presented to the state courts. *Id.* at 8–9.

### 1. The Statutory Speedy Trial Claim

■ Petitioner did not claim in the state courts, and he does not claim now, that his speedy trial rights under the Sixth Amendment were violated. Instead, he argues that he was denied his statutory right to a speedy trial under New York's Criminal Procedure Law ("N.Y.Crim.Proc.Law") § 30.30. Dkt. No. 12, Ex. 2, at 7–9.[4] Specifically, petitioner claims that "New York State Criminal Procedure Law requires that a motion to dismiss must be granted where the People are not ready for trial within six months of the commencement of a criminal action." *Id.* In support of this claim, petitioner attaches his direct appeal brief, in which he argued that the People requested an adjournment in order to obtain DNA test results, and, accordingly, their readiness announcement at his arraignment was illusory. *Id.* There is no reference in the point heading or in the argument section to any federal case law or to the federal constitution. Clearly, the claim petitioner now raises, like the one raised in state court, rests solely on state procedural grounds.

■ A federal court conducting habeas review is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). "It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." *Smith v. Murray*, No. 03–CV–6553, 2007 WL 2581687, at *6 (W.D.N.Y. Sept.5, 2007)(quoting *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir.2002)). The purpose of section § 30.30 is to provide a statutory time frame in which the prosecution must be ready for trial, but it does not require that a defendant actually be given a speedy trial. *Smith*, 2007 WL 2581687, at *6. Section 30.30 is not, therefore, a "statutory embodiment of the constitutional guarantee to a speedy trial." *Smith*, 2007 WL 2581687, at *6 (citing *People v. Anderson*, 66 N.Y.2d 529, 535, 498 N.Y.S.2d 119, 488 N.E.2d 1231 (N.Y.1985))("[a]lthough N.Y.Crim. Proc. Law 30.30, like 30.20, is entitled 'speedy trial,' and in large part serves the same purposes, the history of its adoption makes evident that it addresses only the problem of prosecutorial readiness, and is not a speedy trial statute in the constitutional sense[.]"). Since petitioner's claim is based entirely on N.Y.Crim. Proc. Law § 30.30 and state law, it does not raise a federal constitutional claim upon which federal habeas relief may be granted. It is therefore dismissed. *Smith v. LaClair*, No. 04 Civ. 4356, 2008 WL 728653, at *3 (S.D.N.Y. Mar. 17, 2008)("Because C.P.L. § 30.30 is merely a state law provision requiring the prosecution to be ready for trial, a § 30.30 claim does not raise a federal constitutional claim.") (citations omitted); *Singh v. Fischer*, No. 03–CV–4128, 2004 WL 2999106, at *4, n. 4

---

4. The relevant part of Section 30.30(1)(a) provides that the People must be ready for trial, with certain exceptions, within "six months of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a felony."

(E.D.N.Y. Dec. 29, 2004) ("Singh's claim that the state court erred in its decision regarding his speedy trial rights under New York state law is not cognizable on [federal] habeas review."); *Wilson v. Goord*, No. 00 Civ. 4849, 2004 WL 226149, at *4 (S.D.N.Y. Feb.6, 2004) ("[E]ven if petitioner's statutory speedy trial right was violated, petitioner has failed to raise a constitutional claim that is cognizable on federal habeas corpus review."); *Gibriano v. Atty. Gen. of the State of New York*, 965 F.Supp. 489, 491–92 (S.D.N.Y.1997) (denying habeas relief and noting that "Section 30.30 [of the New York Criminal Procedure Law] is a statutory time in which the People of New York must be ready for trial; Section 30.30 is not, as such, a statutory embodiment of the constitutional guarantee to a speedy trial.").

## 2. *Constitutional Right to a Speedy Trial*

To the extent that petitioner is raising a constitutional speedy trial challenge, that claim is also denied.

### a. *Exhaustion and Procedural Default*

 An application for a writ of habeas corpus may not be granted until the prisoner has exhausted all remedies available in state court unless there is an "absence of available state corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b). To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" any federal constitutional claims to the highest state court in the same factual and legal context in which it appears in the habeas petition. *Baldwin v.*

*Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); *Fama v. Comm'r of Corr. Servcs.*, 235 F.3d 804, 808 (2d Cir. 2000); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir.1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)); *Daye v. Atty. Gen. of New York*, 696 F.2d 186, 191 (2d Cir.1982); *Sweeney v. Superintendent, Watertown Corr. Fac.*, No. 06–CV–0663, 2007 WL 2176987, at *5 (E.D.N.Y. Jul. 27, 2007). "To establish that a federal claim was raised in state court, a petitioner must, in the state courts, (1) have relied on federal case law employing federal constitutional analysis; (2) relied on factually similar state cases employing federal constitutional analysis; (3) asserted the claim "in terms so particular as to call to mind a specific right protected by the Constitution"; or (4) alleged a set of facts well within ordinary constitutional litigation." *Stone v. Stinson*, 121 F.Supp.2d 226, 236 (W.D.N.Y.2000)(citing *Daye*, 696 F.2d at 194). The requirement that the state court have been given a reasonable opportunity to pass on the federal habeas claim is satisfied if the legal basis of the claim made in state court was the "substantial equivalent" of that of the habeas claim. *Picard*, 404 U.S. at 278, 92 S.Ct. 509; *Daye*, 696 F.2d at 189–90. A claim is deemed exhausted when no real avenue remains by which it could be raised. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir.1994), *cert. denied* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995).

 Respondent is correct that petitioner's speedy trial claim in state court rested entirely on state law. The record suggests that the state courts were not alerted to the federal nature of this claim, because the Appellate Division rejected it based solely on state law without reference to the constitution or to federal law. *See* Dkt. No. 12, Ex. 6. Any federal constitu-

tional speedy trial claim is therefore unexhausted. *Harrison v. Walsh*, 2007 WL 1576265, at *21, n. 31 (S.D.N.Y. Jun 1, 2007) (citing *Holden v. Miller*, No. 00 Civ. 0926, 2000 WL 1121551, at *6 (S.D.N.Y. Aug.8, 2000)(claim in state court that state statutory speedy trial rights were violated under N.Y.Crim. Proc. Law § 30.30 is insufficient to put the state appellate court on notice of the federal constitutional nature of the claim, and it is thus unexhausted for federal habeas purposes)); *Jackson v. McClellan*, No. 92 Civ. 7212, 1994 WL 75042, at *2 (S.D.N.Y. Mar.4, 1994)(where petitioner argued in state court that he was denied his right to a speedy trial pursuant to N.Y.Crim. Proc. Law § 30.30, and cited only state law in support of that claim, the claim was not "fairly presented" to state court in a federal constitutional context).

There is no longer a state court in which petitioner could raise a constitutional speedy trial claim. He cannot now file a second direct appeal with the Appellate Division in order to advance this claim because a defendant is "entitled to one (and only one) appeal to the Appellate Division." *See Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir.2001). Since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *Aparicio*, 269 F.3d at 91 (citing N.Y.Crim. Proc. Law § 440.10(2)(c)), petitioner cannot now properly characterize this claim as a federal constitutional claim and assert it in a N.Y.Crim. Proc. Law § 440 motion. Since no remaining avenue exists in which petitioner could raise a constitutional speedy trial claim, it would be deemed exhausted but procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Aparicio*, 269 F.3d at 90; *Spence v. Superintendent, Great Meadow Corr. Fac.*, 219 F.3d 162, 170 (2d Cir.2000).

Petitioner's claim can be reviewed only if he demonstrates cause for the default and resulting prejudice, or that the failure of the federal court to review the claims will result in a "fundamental miscarriage of justice," *i.e.*, that he is innocent. *Calderon v. Thompson*, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998); *Coleman*, 501 U.S. at 748–750, 111 S.Ct. 2546. To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546, *Restrepo v. Kelly*, 178 F.3d 634, 639 (2d Cir.1999). When a petitioner has failed to establish adequate cause for his procedural default, the court need not determine whether he suffered prejudice, since federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir.1985); *Long v. Lord*, No. 03–CV–0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006)(McCurn, S.J.).

Petitioner has failed to establish cause for his failure to exhaust a constitutional speedy trial claim, and has never argued, in either the state courts or this proceeding, that his appellate counsel rendered ineffective assistance by failing to argue the constitutional nature of this claim in the state courts. Since petitioner has not established cause for his procedural default, the Court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless *both* cause and prejudice are demonstrated. *Stepney*, 760 F.2d at 45; *Staley v. Greiner*, No. 01–CV–6165, 2003 WL 470568, at *7 (S.D.N.Y. Feb.6, 2003)(*citing Stepney* ), *Pou v. Keane*, 977 F.Supp. 577, 581 (N.D.N.Y.1997) (Kahn,

J.). Petitioner has also not presented any new evidence that he is "actually innocent" of the crimes for which he was convicted. *See Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Any constitutional speedy trial claim is thus procedurally defaulted and dismissed.

### b. *The Merits*

In any event, the record does not support a claim that petitioner's constitutional speedy trial rights were violated. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial...." U.S. Const. amend. VI. In determining whether there has been a constitutional speedy trial violation, courts should consider the length of the delay and whether it was "uncommonly long," the reason for the delay, including whether the government or the defendant was responsible for it; the defendant's assertion of the right; and whether the defendant suffered prejudice as a result of the delay. *See Doggett v. United States,* 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)(citing *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)); *Smith,* 2007 WL 2581687, at *3, 7; *Dexter v. Artus,* No. 01–CV–237, 2007 WL 963204, at *6–7 (N.D.N.Y. Mar.27, 2007)(McAvoy, S.J., and Bianchini, M.J.). If the length of the delay is presumptively prejudicial, courts will then analyze the remaining three factors. *Barker,* 407 U.S. at 530, 92 S.Ct. 2182.

■■■ The length of the delay between petitioner's arrest on February 23, 1998, and his trial in January 1999, was eleven (11) months. The Second Circuit has stated that there is a "general consensus that a delay of over eight months meets this standard [of presumptive prejudice], while a delay of less than five months does not." *Dexter,* 2007 WL 963204, at *6 (quoting *United States v. Vassell,* 970 F.2d 1162, 1164 (2d Cir.1992), *cert. denied sub nom*

506 U.S. 1009, 113 S.Ct. 627, 121 L.Ed.2d 559 (1992)) (citations omitted); *United States v. Marley,* No. 01–CR–339, 2006 WL 3544929, at *3 (N.D.N.Y. Dec.8, 2006)(Scullin, D.J.) ("Although there is no bright-line standard as to what constitutes a presumptively prejudicial delay, courts generally agree that the threshold is crossed as the delay approaches one year."). While an eleven-month delay may be presumptively prejudicial, it does not, *per se,* establish a violation of petitioner's Sixth Amendment right to a speedy trial. The Supreme Court and the Second Circuit have found that no constitutional speedy trial violation occurred in cases where the period between arrest and trial was much longer. *See Barker,* 407 U.S. at 533–34, 92 S.Ct. 2182 (over 5 years); *Flowers v. Warden, Connecticut Corr. Institution, Somers,* 853 F.2d 131, 133 (2d Cir. 1988) (17–month delay, "while lengthy, is nevertheless considerably shorter than those in other cases where we have found no speedy trial violation."), *cert. denied* 488 U.S. 995, 109 S.Ct. 563, 102 L.Ed.2d 588 (1988)(citing *United States v. McGrath,* 622 F.2d 36 (2d Cir.1980)) (24 months); *Rayborn v. Scully,* 858 F.2d 84, 89 (2d Cir.1988) (over 7 years); *United States v. Lane,* 561 F.2d 1075, 1078 (2d Cir.1977) (58 months). *See also Kelly v. Lape,* No. 04–CV–218, 2007 WL 405856, at *3 (N.D.N.Y. Feb. 1, 2007)(Kahn, D.J., and Homer, M.J.)(ten-month delay "considerably shorter than those in other cases where no Sixth Amendment speedy trial violation has been found.") (citations omitted).

When analyzed under the remaining three *Barker* factors, the eleven-month delay here did not violate petitioner's constitutional right to a speedy trial. *See Dexter,* 2007 WL 963204, at *6 ("The presumption of prejudice that arises with a long delay must be analyzed in connection with the reason for the delay.") (citations omitted); *Smith,* 2007 WL 2581687, at *5.

The reason for the eleven month delay in this case was, in large measure, due to the pretrial motions filed by petitioner's counsel on June 6, 1998. The motions were litigated on October 9, 1998, and a decision on the motion was not rendered until on January 4, 1999. Dkt. No 12, Ex. 2, Attach. R26; Ex. 1, Suppression hearing, at 1–2. Although the People requested an adjournment on the originally scheduled trial date of November 2, 1998, in order to obtain DNA test results, that request resulted in a delay of only two months. *See Rodriguez*, 306 A.D.2d at 687, 761 N.Y.S.2d 368. On this record, there does not appear to have been any "deliberate attempt to delay the trial in order to hamper the defense." *Barker*, 407 U.S. at 531, 92 S.Ct. 2182.

Finally, while petitioner asserted on the first day of his trial that his right to a speedy trial was violated, albeit pursuant to N.Y.Crim. Proc. Law 30.30 (Trial Tr. at 6–8), he has not alleged or shown how he suffered prejudice as a result of the delay. *See Barker*, 407 U.S. at 532, 92 S.Ct. 2182; *Smith*, 2007 WL 2581687 at *6. *See Dexter*, 2007 WL 963204 at *6 (stating that a petitioner must show "particular prejudice" because "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria ... it is part of the mix of relevant facts.") (quoting *United States v. Solomon*, No. 95 Cr. 154, 1996 WL 399814, at *5 (S.D.N.Y. July 16, 1996)), (quoting *Doggett*, 505 U.S. at 655, 112 S.Ct. 2686). Since the delay was not deliberate on the part of the prosecution, and there is no indication of actual prejudice to petitioner, any constitutional speedy trial claim is dismissed.

### D. *Justification Jury Charge*

Petitioner next argues that the trial court improperly refused to instruct the jury on justification. Dkt. No. 1, at 6. Respondent argues that habeas review is precluded because the federal constitutional nature of this claim was not presented to the state courts, and the claim is without merit. Dkt. No. 12, Resp't Mem., at 11–14.

### 1. *Exhaustion*

As noted above, a petitioner must procedurally and substantively exhaust all claims in the state courts before an application for a writ of habeas corpus may be granted. 28 U.S.C. § 2254(b). Petitioner's justification jury charge claim was fairly presented to the state courts because it was the "substantial equivalent" of his habeas claim. *Picard*, 404 U.S. at 278, 92 S.Ct. 509; *Daye*, 696 F.2d at 189–90. The Second Circuit specifically addressed this issue in *Jackson v. Edwards*, 404 F.3d 612 (2d Cir.2005). There, the petitioner claimed, based on state law, that the failure to charge justification deprived him of a fair trial because, on a reasonable view of the evidence, a jury might have decided his actions were justified. The Second Circuit held that this claim was exhausted for federal habeas purposes. Although the petitioner failed to cite to the Constitution or federal case law, the Second Circuit explained that the legal standards "for his federal and state claims were so similar that by presenting his state claim, he also presented his federal claim." *Id.* at 621. That is so because the federal and state claims share the same legal standard. Whether presented under state or federal law, the state court was required to determine first whether a justification charge was appropriate based on "any reasonable view of the evidence" under N.Y.Penal Law § 35.15, and was then required to determine whether the failure to give the charge "was sufficiently harmful to make the conviction unfair." *Id.* at 621 (citing *Davis v. Strack*, 270 F.3d 111, 124 (2d Cir.2001)). The same is true here, and this claim is therefore exhausted.

## 2. Clearly Established Supreme Court Precedent

 Federal habeas corpus relief is unavailable for errors of state law. *Estelle*, 502 U.S. at 67–68, 112 S.Ct. 475 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). In order for a federal habeas court to overturn a conviction resulting from a state trial in which a properly requested instruction was not given, a petitioner must establish that the failure to give the charge "so infected the entire trial that the resulting conviction violates due process.'" *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *accord, e.g., Davis*, 270 F.3d at 123. A habeas petitioner carries a heavy burden in order to succeed on a claim that a jury instruction was erroneously refused. *Norwood v. Artis*, 487 F.Supp.2d 321, 333 (W.D.N.Y.2007).

 Under New York law, a defendant is entitled to a justification defense when the evidence, viewed in the light most favorable to the defendant, might have led the jury decide that the defendant's actions were justified. *Davis*, 270 F.3d at 124 (citing *People v. Padgett*, 60 N.Y.2d 142, 144–45, 468 N.Y.S.2d 854, 456 N.E.2d 795 (1983) and *People v. Magliato*, 68 N.Y.2d 24, 29, 505 N.Y.S.2d 836, 496 N.E.2d 856 (1986)). A defendant may use physical force on another person if he "reasonably believes [force] is necessary to defend himself ... from what he reasonably believes to be the use or imminent use of unlawful physical force." N.Y. Penal Law § 35.15(1). The defense has both a "subjective and an objective component: The fact-finder must determine that the defendant believed deadly physical force was necessary and that a reasonable person would have believed the use of deadly physical force was necessary under the same circumstances." *Jackson*, 404 F.3d at 623 (citing *Matter of Y.K.*, 87 N.Y.2d

430, 433–34, 639 N.Y.S.2d 1001, 663 N.E.2d 313 (1996), and *People v. Goetz*, 68 N.Y.2d 96, 114–15, 506 N.Y.S.2d 18, 497 N.E.2d 41 (1986)). A defendant is not justified in using physical force against another person if: (1) the defendant provoked the other's conduct; (2) the defendant was the initial aggressor and had not withdrawn from the encounter; or (3) the physical force involved was the product of agreed-upon combat that was not specifically authorized by law. N.Y. Penal Law § 35.15(1)(a)-(c). A defendant has a duty to retreat before resorting to deadly force if he can do so with "complete safety as to himself and others," unless he is in his own home and was not the initial aggressor. *Id.* at (2)(a)(i). The duty to retreat does not arise until the defendant reasonably believes the other person is using or is about to use deadly force against him. *Id.* at (2)(a).

## 3. Contrary to, or an Unreasonable Application of, Clearly Established Supreme Court Precedent

 On direct appeal, petitioner claimed that a reasonable view of the evidence supported a justification charge because he faced being hit with chairs, was stabbed in the wrist or hand, and because others involved in the altercation had knives they used against him. Dkt. No. 12, Ex. 2, at 10–11. Petitioner further argued that by denying his request for a justification charge, even after the jury asked what role self defense played in the case, the trial court deprived him of a defense. *Id.* at 11–12.

The Appellate Division rejected this argument, finding that no reasonable view of the evidence supported a justification charge because, when the victim was stabbed, only petitioner had a knife. *Rodriguez*, 306 A.D.2d at 688, 761 N.Y.S.2d 368. The court further found that neither

the victim nor Danny possessed a weapon or threatened the use of deadly force, and accordingly, "neither could be viewed as the initial aggressor." *Id.* Finally, the court ruled that there was no proof "that defendant attempted to retreat or that he was unable to do so with complete safety to himself." *Id.* (quoting *People v. Counts,* 214 A.D.2d 897, 898, 625 N.Y.S.2d 697 (3d Dept.1995), *lv. denied* 86 N.Y.2d 792, 632 N.Y.S.2d 506, 656 N.E.2d 605 (1995)). The Appellate Division's decision, which is entitled to AEDPA deference, is supported by the record.

The trial evidence established that petitioner was the initial aggressor. Danny and Cruz were unarmed when they confronted petitioner and ordered him to leave the house. Trial Tr. at 303–05, 397–99, 404–06, 455–57, 488–92, 509. Petitioner responded by removing a knife from his waistline. When Cruz saw the knife, he told petitioner: "If you take out that knife, there's gonna be problems." *Id.* at 408–09. Petitioner threatened to stab Cruz, and immediately stabbed him in the left chest. *Id.* at 409–10. Even if, in the light most favorable to petitioner, he believed Cruz's words were threatening, "[v]erbal provocation would not have justified [petitioner's] use of physical force." *Thomas v. Duncan,* No. 01 Civ. 6792, 2001 WL 1636974, at *13 (S.D.N.Y. Dec.21, 2001)(quoting *People v. Soriano,* 188 A.D.2d 420, 420, 591 N.Y.S.2d 1008 (1st Dept.1992), *lv. denied* 81 N.Y.2d 847, 595 N.Y.S.2d 747, 611 N.E.2d 786 (1993)). That is especially true where, as here, there is no evidence that Cruz or Danny were armed with a weapon. *Id.* (citing *People v. Lee,* 185 A.D.2d 824, 825, 586 N.Y.S.2d 646 (2d Dept.1992)(no justification defense available to defendant where "deceased engaged in verbal and physical exchange over the use of a public phone [but there was] no indication in the record that the deceased was ever armed with a weapon"), *lv. denied,* 82 N.Y.2d 806, 604 N.Y.S.2d 943, 624 N.E.2d 1038 (1992)).

Contrary to petitioner's claim, the testimony established that it was not until *after* Cruz was stabbed that petitioner and Danny struggled over the knife petitioner was holding, the two men engaged in a physical altercation during which Danny swung a chair at petitioner, and Danny armed himself with a kitchen knife. *Id.* at 411–17, 434–36. Significantly, petitioner was not charged with any crimes relating to the altercation with Danny. Neither Cruz nor Ortiz, the named complainants in the indictment, were involved in this altercation after Cruz was stabbed and had retreated to the basement for his own safety. *Id.* at 498–99. Finally, the only other person seen holding a knife was Henry Ortiz, and the testimony established that he picked up the knife after petitioner had already left the home. *Id.* at 434–36. The Appellate Division's determination that petitioner was not entitled to a justification charge because he was the initial aggressor, and because Cruz and Danny were not armed when petitioner stabbed Cruz, was not "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2).

Finally, the Appellate Division's determination that there was no proof petitioner attempted to retreat or was unable to do so with complete safety is also reasonable. *Rodriguez,* 306 A.D.2d at 688, 761 N.Y.S.2d 368. As noted above, the duty to retreat does not arise until the defendant reasonably believes a person is using or is about to use deadly force against him. *Id.* at (2)(a). There is no evidence in the record that either Danny or Cruz were using or were about to use deadly force against petitioner. Although petitioner lived in the Ortiz home, and thus had no duty to retreat, he cannot invoke this exception because he was the initial aggres-

sor. N.Y. Penal Law § 35.15(2)(a)(i). This claim is dismissed.

### E. Admission of Petitioner's prior bad acts

■ Petitioner next argues that the trial court improperly permitted evidence of his prior bad acts, including prior assaults against Ortiz, because the prejudicial impact of this evidence outweighed any probative value. Dkt. No. 1, at 6. Respondent argues that this claim is unexhausted because petitioner never presented the federal constitutional nature of this claim to the state courts, and the claim is without merit. Resp't Mem. at 14–16.

#### 1. Exhaustion and Procedural Bar

Petitioner raised this issue on direct appeal, but relied exclusively on state law with no reference to the federal constitution or law. Dkt. No. 12, Ex. 2, at 13–14; Ex. 6. This claim is thus unexhausted for purposes of federal habeas review because it was analyzed solely as a state evidentiary error. Dkt. No. 12, Ex. 2, at 13–14. See Martinez v. Artuz, No. 99 Civ. 5744, 2001 WL 540737, at *7 (S.D.N.Y. May 22, 2001) (where petitioner's claim that the trial court improperly admitted evidence of his prior drug trafficking was not presented to the state courts as a constitutional claim, and his appellate brief discussed only state court cases and asserted violations only of state law on the introduction of prior bad acts, petitioner failed to bring "to mind a specific constitutional issue").

Petitioner cannot now raise this claim in a second direct appeal or in a motion to vacate his conviction under N.Y.Crim. Proc. Law § 440.10 because New York law prohibits collateral attacks on a conviction when, although sufficient facts appeared on the record to permit adequate review on appeal, the defendant unjustifiably failed to raise the issue on direct appeal. N.Y.Crim. Proc. Law § 440.10(2)(c). Since no remaining avenue exists in which petitioner could raise this claim, it is deemed exhausted but procedurally defaulted. Aparicio, 269 F.3d at 90; Spence, 219 F.3d at 170.

■ As noted above, this Court may review the procedurally barred claim only if petitioner demonstrates cause for the default and resulting prejudice, or that the failure of the federal court to review the claim will result in a "fundamental miscarriage of justice." Calderon, 523 U.S. at 559, 118 S.Ct. 1489; Coleman, 501 U.S. at 748–750, 111 S.Ct. 2546. Petitioner has not alleged cause, and he has never argued in his petition or in state court, that appellate counsel was ineffective for failing to present the federal nature of this claim to the state courts. Petitioner has also failed to present any new evidence that he is "actually innocent" of the crimes for which he was convicted. See Schlup, 513 U.S. at 327, 115 S.Ct. 851. The procedural default bars federal review of this claim, and it is dismissed. Even if this claim was not procedurally barred, no relief would be due.

#### 2. Clearly Established Supreme Court Precedent

■ In general, federal courts cannot consider challenges to a state court's evidentiary rulings. See Estelle, 502 U.S. at 67–68, 112 S.Ct. 475 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). A decision to admit evidence of a defendant's bad acts under People v. Molineux, 168 N.Y. 264, 61 N.E. 286 (1901), constitutes an evidentiary ruling based on state law. Sierra v. Burge, No. 06–CV–14432, 2007 WL 4218926, at *6 (S.D.N.Y. Nov. 30, 2007) (citing Roldan v. Artuz, 78 F.Supp.2d 260, 276–77 (S.D.N.Y. 2000)) ("A habeas claim asserting a right to relief on Molineux grounds must rise to the level of a constitutional violation ...

because *Molineux* is a state law issue.") (citations omitted). Federal courts reviewing state evidentiary matters can issue a writ of habeas corpus only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right, and that the error "was so extremely unfair that its admission violates fundamental conceptions of justice." *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir.1998) (quoting *Dowling v. United States,* 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), *cert. denied* 525 U.S. 840, 119 S.Ct. 101, 142 L.Ed.2d 81 (1998)). Petitioner "bears a heavy burden because evidentiary errors generally do not rise to constitutional magnitude." *Sierra,* 2007 WL 4218926 at *6 (quoting *Copes v. Schriver,* No. 97–2284, 1997 WL 659096, at *3 (S.D.N.Y. Oct.22, 1997)) (citation omitted).

██ Under New York law, evidence of prior crimes or bad acts is admissible to prove a specific crime if it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan between the commission of two or more crimes, or the identity of the person charged with the commission of the crime. *Molineux,* 168 N.Y. at 293, 61 N.E. 286. New York courts frequently admit evidence of prior bad acts, including uncharged crimes, "as background material" and to "complete the narrative of events." *Charles v. Fischer,* 516 F.Supp.2d 210, 217 (E.D.N.Y.2007)(citing *People v. Till,* 87 N.Y.2d 835, 836–37, 637 N.Y.S.2d 681, 661 N.E.2d 153 (1995)) ("[S]uch evidence may be allowed when, as here, it bears on the motive and state of mind in relation to an avoidance of apprehension during immediate flight from a crime and is found to be 'needed as background material' or to 'complete the narrative of the episode' "). *See also Yapor v. Mazzuca,* No. 04 Civ. 7966, 2005 WL 894918, at *17 (S.D.N.Y. Apr.19, 2005)("the fact of Yapor's wife's arrest on a drug charge completed the narrative and the trial court was within its

discretion under New York law to admit it.") (citations omitted). Evidence of a defendant's conduct that demonstrates a "guilty mind including evidence of coercion and harassment of a witness" is also admissible. *Charles,* 516 F.Supp.2d at 217 (citing *People v. Plummer,* 36 N.Y.2d 161, 365 N.Y.S.2d 842, 325 N.E.2d 161 (1975) (holding that evidence of defendant's threatening behavior toward a witness was admissible)).

### 3. Contrary to, or an Unreasonable Application of, Clearly Established Supreme Court Precedent

██ The trial court ruled that the prosecutor could question Ortiz and Danny with regard to threatening phone calls petitioner made to them after his arrest because that testimony would "give context to the jury," and because it tended to show Rodriguez's consciousness of guilt. Trial Tr. at 22, 32. The trial court also ruled that the prosecutor could question Ortiz regarding the circumstances surrounding the issuance of the January 1997 order of protection because they were directly related to the three counts of the indictment that charged Rodriguez with criminal contempt. *Id.* at 32–33.

On appeal, the Appellate Division found that the trial court properly admitted evidence of the threatening calls because this information "completed the narrative in which the criminal acts occurred, tended to show the absence of accident … and 'was indicative of defendant's consciousness of guilt.' " *Id.* It further found that the trial court properly permitted the prosecutor to introduce limited evidence of the circumstances surrounding the issuance of the order of protection at issue in the case. *Rodriguez,* 306 A.D.2d at 688, 761 N.Y.S.2d 368. The Appellate Division decision did not violate any state evidentiary rule. *Charles,* 516 F.Supp.2d at 217;

*Plummer*, 36 N.Y.2d 161, 365 N.Y.S.2d 842, 325 N.E.2d 161. *See Jones v. Stinson*, 94 F.Supp.2d at 391–92 (E.D.N.Y. 2000), *rev'd on other grounds*, 229 F.3d 112 (2d Cir.2000)(once the habeas court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis). Since the admission of this testimony did not render the trial "so extremely unfair" as to "violate fundamental conceptions of justice," *Dunnigan*, 137 F.3d at 125, habeas relief must be denied on this ground.

To the extent that petitioner claims that the trial court improperly concluded that the probative value of this evidence was outweighed by its prejudicial impact, that claim also fails because that determination is "left to the sound discretion of the trial judge." *Yapor*, 2005 WL 894918, at *18 (citing *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir.2000)). Since the trial court here specifically limited the type and amount of evidence of bad acts that it deemed admissible, it did not err in exercising its discretion.

■ Finally, it is notable that the evidence at issue here would have been admissible under the Federal Rules of Evidence, which "further suggests that the introduction of the evidence did not violate petitioner's due process rights." *Toland v. Walsh*, 2008 WL 820184, *12–13 (N.D.N.Y. March 26, 2008)(citing Fed.R.Evid. 404(b)) (evidence of prior misconduct is not admissible to prove bad character, but may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of accident or mistake"). Since the admission of the evidence satisfies the federal rules of evidence, it "will not violate a [state] criminal defendant's due process

rights or provide a basis for habeas corpus relief." *Long v. Donnelly*, 335 F.Supp.2d 450, 462 (S.D.N.Y.2004). This claim is being dismissed.

### F. *Sentencing*

Petitioner next claims that the sentence imposed was unduly harsh and excessive because he was acquitted of attempted murder and the trial court should have shown leniency. Dkt. No. 1, at 8.

■ It is firmly established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992); *Mayerhofer v. Bennett*, No. 02–CV–0074, 2007 WL 1624767, at *7 (N.D.N.Y. June 6, 2007). Here, petitioner was convicted of first degree assault, first degree criminal contempt (three counts), fourth degree criminal possession of a weapon, and second degree menacing (two counts). Trial Tr. at 747–55. The trial court was authorized to sentence petitioner to a maximum indeterminate sentence of twelve and one-half to twenty-five years for first degree assault (*See* N.Y. Penal Law §§ 70.02(3)(a), (4) (McKinney L.1995, Subd. 4 c. 3 § 4); 120.10(1)),[5] an indeterminate term having a minimum of one year and a maximum term of four years on each count of criminal contempt (*See* N.Y. Penal Law §§ 70.00(2)(e); 215.51(b)(1), (5), (6)), and a maximum term of one year for each count of second degree menacing and fourth degree criminal possession of a weapon (N.Y. Penal Law § 70.15(1); 120.14; 265.01(2)). Petitioner's sentence for first degree assault, an indeterminate term of ten to twenty years in prison, fell well within the permissible range. While

---

**5.** New York's sentencing scheme that requires determinate sentences for violent felony offenses (N.Y. Penal Law § 70.02) applies to crimes committed on or after September 1, 1998. Since the date of the offenses in this case was February 23, 1998, the statute was not yet in effect.

he was sentenced to the maximum term permissible for each remaining offense, his sentence did not exceed it. *See* Sentencing, March 5, 1999 ("Sentencing Tr.") at 12–13.

▮ Petitioner's claim that the sentence was unduly harsh because the judge should have been more lenient is not a federal claim subject to review by a *habeas* court, because judges have the authority to exercise broad discretion when imposing sentences. *See U.S. v. Booker*, 543 U.S. 220, 223, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir.1977).

▮ Finally, to the extent that petitioner's claim could arguably be viewed as a challenge under the Eighth Amendment's prohibition of cruel and unusual punishment, that claim also fails. The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction. *Lockyer v. Andrade*, 538 U.S. 63, 72–73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); *Harmelin v. Michigan*, 501 U.S. 957, 995, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). It is well-established that a sentence of imprisonment that is within the limits of a valid state statute is not cruel and unusual punishment in the constitutional sense. *See White*, 969 F.2d at 1383; *Lou v. Mantello*, No. 98–CV–5542, 2001 WL 1152817, at *13 (E.D.N.Y. Sept.25, 2001). The Supreme Court has held that for offenses less than manslaughter, sentences longer than 25 years are not grossly disproportionate. *See Staubitz v. Lord*, No. 03–CV–0671, 2006 WL 3490335, at *2 (E.D.N.Y. Dec.1, 2006)(citing *Ewing v. California*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003)(25 years to life for grand theft) and *Harmelin*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)(life in prison without the possibility of parole for cocaine possession)). Petitioner's sentence was not contrary to, or an unreasonable appli-

cation of, that precedent. Since the sentence imposed was plainly within the limits authorized by statute, and was not grossly disproportionate to the crime of conviction, this ground of the petition is denied.

### G. *Effectiveness of Appellate Counsel*

Petitioner next claims that appellate counsel was ineffective on direct appeal because he failed to challenge the trial court's jury charge on intent. Dkt. No. 1 at 8. Respondent argues that this claim is without merit. Resp't Mem. at 18–20.

Since the Appellate Division considered this claim and rejected it (Dkt. No. 12, Ex. 10), it is deemed exhausted and the deferential AEDPA standard of review applies. *Sellan*, 261 F.3d at 314 (ineffective assistance of counsel claim deemed adjudicated on the merits where Appellate Division denied petitioner's writ of *coram nobis* and there was no basis to conclude that the claim was rejected on non-substantive grounds).

### 1. *Clearly Established Supreme Court Precedent*

▮ Analysis of an ineffective assistance of appellate counsel claim is informed by the same considerations that pertain to a claim of ineffective assistance generally; to prevail on such a claim, a petitioner must demonstrate that: (1) appellate counsel's performance fell below an objective standard of professional reasonableness; and (2) but for appellate counsel's alleged errors, the results of the proceedings would have been different, and as such, petitioner suffered prejudice. *Smith v. Robbins*, 528 U.S. 259, 285–86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When challenging the effectiveness of appellate counsel, a petitioner must show that counsel "omitted significant and obvious issues

while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994), *cert. denied* 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994). A petitioner must show more than counsel's failure to raise a non-frivolous argument, as counsel is required to use professional judgment when deciding to concentrate on a few key issues while eliminating weaker arguments, and is not required to advance every argument, regardless of merit, urged by the petitioner. *Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Sellan,* 261 F.3d at 317.

### 2. *Contrary to or an Unreasonable Application of Clearly Established Supreme Court Precedent*

Analyzed under these standards, the record fully supports the Appellate Division's rejection of petitioner's claim that appellate counsel was ineffective. Appellate counsel filed a sixteen page brief, together with a 23 page Appendix, in which he advanced five claims he believed had the greatest chance of success. Dkt. No. 12, Ex. 2, 3. Counsel also sought leave to appeal to the Court of Appeals on each issue raised on direct appeal. *Id.* at Ex. 6. There is nothing to suggest that the appellate brief filed by counsel was deficient. *E.g., Gonzalez v. Duncan,* No. 00–CV–1857, 2001 WL 726985, at *6 (E.D.N.Y. June 22, 2001) (denying habeas claim alleging ineffective assistance of appellate counsel where appellate brief reveals sound appellate strategy on part of attorney); *Davis v. Keane,* No. 99 CV 71, 2001 WL 13288, at *6 (E.D.N.Y. Jan. 4, 2001) (same), *aff'd,* 45 Fed.Appx. 31 (2d Cir. 2002).

■ Nonetheless, petitioner claims that appellate counsel should have argued that the trial court's jury instruction on intent was inadequate. Dkt. No. 1, at 8. Appellate counsel likely appreciated, however, that since there had been no objection to the intent charge at trial, this claim was unpreserved for appellate review. N.Y.Crim. Proc. Law § 470.05(2)(requiring that an objection be lodged at the time of the ruling or "at any subsequent time when the court had an opportunity of effectively changing the same ... [and] is sufficient if the party made his position with respect to the ruling or instruction known to the court.").

Counsel also likely recognized that the trial court's repeated instruction to the jury that a person acts with intent to commit a crime when his "conscious objective or purpose" is to commit that crime was sufficient. Trial Tr. at 699, 702, 707, 710, 713, 716, 719. *See, e.g., Trubin v. Mazzuca,* No. 04 Civ. 6156, 2006 WL 1876669, at *11 (S.D.N.Y. Jul.6, 2006) (there was nothing "unclear or improper" about the trial court's instruction that the petitioner had "the intent to commit a crime in a building when that person's conscious objective or purpose is to commit a crime in that building"); *Thurston v. McGinnis,* No. 02–CV–6157, 2003 WL 22956983, at *5 (E.D.N.Y. Oct.15, 2003)(trial court's instruction that the jury must find that the petitioner had "the intent or conscious objective to steal property" was sufficient). Appellate counsel cannot be ineffective for failing to raise an unpreserved, meritless claim and focusing instead on other viable claims. "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith,* 477 U.S. at 536, 106 S.Ct. 2661 (quoting *Jones,* 463 U.S. at 751–52, 103 S.Ct. 3308); *Torres v. McGrath,* 407 F.Supp.2d 551, 562 (S.D.N.Y.2006) (" '[f]ailure to make a meritless argument does not amount to inef-

fective assistance'") (quoting *United States v. Arena*, 180 F.3d 380, 396 (2d Cir.1999), *cert. denied*, 531 U.S. 811, 121 S.Ct. 33, 148 L.Ed.2d 13 (2000)). This claim is dismissed.

## H. *The Intent Charge*

Petitioner next argues that the trial court's jury charge on intent was inadequate because the court did not instruct the jury on the "subjective legal principles required." Dkt. No. 1, at 9. Respondent argues that this claim is unexhausted and without merit. Resp't Mem. at 13–14.

Petitioner did not raise this claim on direct appeal. While he argued at length that the intent charge was inadequate in his state writ of error *coram nobis* petition, he did so in the context of his claim that appellate counsel was ineffective for failing to challenge the intent charge on direct appeal. Dkt. No. 12, Ex. 8. Memorandum of Law, at 4–11. It was never presented to the state courts as a separate and independent claim. *See* App. Br.; 28 U.S.C. § 2254(b); *Aparicio*, 269 F.3d at 90; *Bossett*, 41 F.3d at 828. Since petitioner can no longer raise this claim in a second direct appeal or in a C.P.L. 440 motion, it is deemed exhausted but procedurally defaulted. *Aparicio*, 269 F.3d at 90; *Spence*, 219 F.3d at 170.

■ As noted above, this Court may review the procedurally barred claim only if petitioner demonstrates cause for the default and resulting prejudice. In Grounds Six and Seven of his petition, he argues that appellate counsel was ineffective for failing to challenge the intent charge on direct appeal. The ineffectiveness of counsel for not raising or preserving a claim in state court will be sufficient to show cause for a procedural default only when counsel was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Aparicio*, 269 F.3d at 91.

■ Petitioner's challenge to appellate counsel's effectiveness is without merit (*see* section G *supra* ), and thus, that claim may not serve as "cause" for the procedural default. *Aparicio*, 269 F.3d at 91–92. Finally, as previously noted, he has failed to present any new evidence that he is "actually innocent" of the crimes for which he was convicted. *See Schlup*, 513 U.S. at 327, 115 S.Ct. 851. Thus, petitioner has not shown that the failure to review this claim will result in a "fundamental miscarriage of justice." *Calderon*, 523 U.S. at 559, 118 S.Ct. 1489; *Coleman*, 501 U.S. at 748–750, 111 S.Ct. 2546. The procedural default bars federal review of this claim, and it is dismissed.

In any event, as noted above, the trial court's jury instruction on intent was sufficient. Petitioner has failed to demonstrate that the instruction "misstated state law," and "also that the error violated a right guaranteed to him by federal law." *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir.1985) (citing *Naughten*, 414 U.S. at 146, 94 S.Ct. 396) ("Before a federal court may overturn a conviction resulting from a state trial, . . . it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."). This claim is dismissed.

## III. *Certificate of Appealability*

For the reasons set forth above, the petition for a writ of habeas corpus filed by petitioner is dismissed. No certificate of appealability shall issue because he has failed to make a "substantial showing of a denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2)("A certificate of appealability may issue . . . only if the applicant has made a substantial showing

of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000), *cert. denied* 531 U.S. 873, 121 S.Ct. 175, 148 L.Ed.2d 120 (2000).

Accordingly, after reviewing petitioner's submissions and the relevant law, and for the reasons stated above, it is

ORDERED that

1. The petition for a writ of *habeas corpus* is DISMISSED; and

2. The Clerk of the Court is directed to file judgment accordingly and serve a copy of this Order on the petitioner by regular mail.

IT IS SO ORDERED.